UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CITIZENS BANK HOLDING INC.,

    Plaintiff,

v.

ATLANTIC SPECIALTY INSURANCE COMPANY;

ONEBEACON INSURANCE GROUP LTD.,

    Defendants.

Case No. _____
Jury Trial Demanded

## COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

Plaintiff Citizens Bank Holding Inc. ("Citizens" or "Plaintiff"), by and through its attorneys, Quarles & Brady LLP, complains against Defendants Atlantic Specialty Insurance Company and OneBeacon Insurance Group Ltd. (collectively "OneBeacon" or "Defendants"), as follows:

### NATURE OF THE ACTION

1. This insurance coverage action is brought by Plaintiff against its insurer in connection with a loss that Plaintiff has sustained resulting directly from Plaintiff's reliance on a purported USDA Assignment Guarantee Agreement and USDA Loan Note Guaranty later revealed to bear forged signatures.

2. Defendants are Plaintiff's bond insurer and underwriter who issued to Plaintiff a financial institution bond (the "Bond") in which Defendants promised to indemnify Plaintiff for (1) "FORGERY, COUNTERFEIT, ALTERATION AND FRAUDULENT INSTRUCTIONS";

(2) "FORGERY AND ALTERATION OF SECURITIES AND OTHER INSTRUMENTS"; and (3) "FRAUDULENT MORTGAGES – DEFECTIVE SIGNATURES." A true and correct copy of the Bond is attached to this Complaint as Exhibit A.

3. In violation of their obligations under the Bond and in bad faith, Defendants have failed or refused to indemnify Plaintiffs with respect to the losses Plaintiff sustained as a direct result of the forgeries.

## THE PARTIES

4. Plaintiff Citizens is a corporation existing under the laws of the State of Wisconsin with its principal place of business at 301 N Rochester St., Mukwonago, WI 53149-1342.

5. Defendant Atlantic Specialty Insurance Company is a corporation existing under the laws of the State of New York with its principal place of business at 195 Broadway, New York, NY 10007.

6. Defendant OneBeacon is a corporation existing under the laws of the State of Minnesota with its principal place of business at 601 Carlson Parkway, Suite 600, Minnetonka, Minnesota 55305.

## JURISDICTION AND VENUE

7. This Court has diversity jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(2), because Plaintiff is a citizens of the State of Wisconsin and Defendants are citizens of foreign states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

8. This Court has personal jurisdiction over Defendants, because the Policies are to be performed by Defendants, in whole or in part, within this judicial district in Wisconsin and the Policies insure an entity (*i.e.*, Plaintiff) having its principal place of business within this judicial district in Wisconsin.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to Plaintiff's insurance claim occurred in this judicial district.

## THE PENNANT TRANSACTION

### The Citizens-Pennant Investment Advisory Agreement

10. Citizens is a full-service community bank, chartered under the laws of the State of Wisconsin. It engages in lending and provides depository services for local business and individual customers in the Waukesha and Walworth County areas.

11. Starting in 1999, Citizens began purchasing interests in loan pools through Pennant Management, Inc. ("Pennant").

12. Pennant is a Wisconsin corporation with its principal place of business in Milwaukee, WI. Pennant is engaged in acquiring United States Department of Agriculture ("USDA") and Small Business Administration ("SBA") guaranteed loans on behalf of community banks, Qualified Retirement Plans, and municipalities and political subdivisions.

13. Citizens and Pennant entered an Investment Advisory Agreement dated August 30, 1999 whereby Citizens authorized Pennant to act on its behalf.

### The Pennant-First Farmers Master Repurchase Agreements

14. Pennant acquired loans originated by First Farmers Financial, LLC ("First Farmers").

15. First Farmers is a Florida limited liability company. It is a USDA-approved non-traditional (non-bank) lender operating in Florida and Georgia. First Farmers originated loans, represented that these loans were secured by USDA guarantees, sold the loans to asset managers, including Pennant.

-3-
QB\35503683.3

16. Pennant and First Farmers entered into a Master Repurchase Agreement dated May 9, 2013 whereby Pennant's customers agreed to purchase what are collectively referred to as "Repo Assets" from First Farmers.

## The Repo Assets

17. The Master Repurchase Agreement described the Repo Assets as "[g]uaranteed [p]ortions of USDA B&I Loans and all supporting agreements, documents and instruments (including without limitation (1) USDA Assignment Guarantee Agreements, [USDA Form RD2579-6]; (2) Copies of Loan Note Guaranties [USDA Form RD4279-5] and applicable Promissory Notes underlying such loan note guarantees; and (3) Original Certificates of Incumbency [USDA Form RD4279-7] issued by the USDA in connection with its execution of such [B&I Assignment] Agreements."

18. Consistent with the Master Purchase Agreement description of the Repo Assets, First Farmers transferred a guaranteed portion of the B&I loan to Pennant (as agent) by providing Pennant's custodian and sub-custodian (as described below) several documents including but not limited to:

    a. An original USDA Assignment Guarantee Agreement, executed by the USDA, First Farmers and U.S. Bank as sub-custodian;

    b. A copy of the USDA Loan Note Guaranty for the applicable B&I Loan, issued by the USDA to First Farmers;

    c. A copy of the underlying Promissory Note evidencing the applicable B&I loan; and

d.  An original Certificate of Incumbency evidencing the authority of the USDA representative who executed the Loan Note Guaranty corresponding to the applicable B&I loan.

### The Custody and Sub-Custody Agreements

19. In connection with the execution of the Master Repurchase Agreement, Pennant, First Famers, and GreatBanc Trust Company ("GreatBanc") entered a repurchase transaction tri-party Custody Agreement (the "Repo Custody Agreement").

20. Under the Repo Custody Agreement, GreatBanc acted as custodian holding the Repo Assets purchased by Pennant's customers, including Citizens, by creating and maintaining custody accounts for Pennant's customers and First Farmers. GreatBanc received and delivered the Repo Assets and cash under instructions given by Pennant and First Farmers. GreatBanc segregated and separately accounted on its books and records for all Repo Assets held for Pennant's customers.

21. In connection with execution of the Master Repurchase Agreement and Repo Custody Agreement, First Farmers and GreatBanc entered into a Master Account Control Agreement, dated May 9, 2013 (the "Repo Control Agreement").

22. To perform its custodial functions under the Repo Custody Agreement, GreatBanc and U.S. Bank National Association (" U.S. Bank") entered a sub-custody agreement (the "Sub-Custody Agreement").

23. Under the Sub-Custody Agreement, U.S. Bank agreed to hold Repo Assets as sub-custodian for GreatBanc. U.S. Bank segregated and separately accounted on its books and records for all Repo Assets held by U.S. Bank as sub-custodians for GreatBanc.

## Payment of Funds from Citizens

24. Through Pennant, Citizens purchased a $15 million share in loans originated by First Farmers.

25. Pursuant to its Investment Advisory Agreement with Pennant, Pennant's Repo Custody Agreement with GreatBanc, and GreatBanc's Sub-Custody Agreement with U.S. Bank, U.S. Bank had actual physical possession of the original USDA Assignment Guarantee Agreements and other related loan documents prior to Citizens purchasing any of the loans originated by First Farmers.

26. In making transfers of loan proceeds, Citizens relied (through its authorized agents, custodians, and sub-custodians) on purported USDA Assignment Guarantee Agreements that appeared to have been signed by a USDA representative, Quinton Robinson.

27. In fact, Quinton Robinson's signature was forged.

28. Citizens would not have transferred any loan proceeds if it had known that the signature was forged.

29. As a direct result of Citizens reliance on the forgery, it lost as much as $15 million it paid to purchase the loans originated by First Farmers.

## THE BOND

30. Defendant OneBeacon issued Financial Institution Bond number 474-00-17-21-00001 to Citizens underwritten by Defendant Atlantic Specialty Insurance Company. (Exhibit A.)

31. Under the Bond, OneBeacon agreed to indemnify Citizens up to $5,000,000 for:

   a. "Loss resulting directly from: (1) **Forgery**…of, on, or in, any…Letter of Credit…or (2) transferring, paying, or delivering any funds…on the faith of any written instructions or advices directed to the Insured and authorizing or acknowledging the transfer, payment, delivery or receipt of

-6-
QB\35503683.3
Case 2:15-cv-00782-DEJ   Filed 06/29/15   Page 6 of 12   Document 1

     funds or Property, which instructions or advises purport to have been signed or endorsed by any customer of the Insured of by any banking institution, but which instructions or advices either bear a signature which is a Forgery or have been altered without the knowledge and consent of such customer or banking institution…" (Exhibit A, Insuring Agreement D, p. 3.)

  b.  "Loss resulting directly from the Insured having in good faith, for its own account or for the account of others (1) acquired, sold, delivered, or given value, extended credit or assumed liability, on the faith of any original Written document that is a:…corporate, partnership or personal Guarantee…which (i) bears a handwritten signature of any …guarantor…that is a Forgery…" (Exhibit A, Insuring Agreement E, p. 4.)

  c.  "Loss resulting directly from the Insured having, in good faith and in the course of business in connection with any Loan, accepted or received or acted upon the faith of any real property mortgages, real property deeds of trust or like instruments pertaining to realty or assignments or such mortgages, deeds of trust or instruments which prove to have been defective by reason of the signature thereon of any person having been obtained through trick, artifice, fraud or false pretenses…" (Exhibit A, Insuring Agreement G, p. 4–5.)

32.  Citizens is entitled to coverage under one or more of these insuring agreements for losses resulting directly from the forged USDA documents and its reliance on the documents.

33.  Citizens is entitled to coverage under Insuring Agreement D because the USDA Assignment Guarantee Agreement bears a forgery ("affixing the handwritten signature or a reproduction of the handwritten signature, of another natural person without authorization and with the intent to deceive") and the USDA Assignment Guarantee Agreement meets the Bond definition of "Letter of Credit" ("an engagement in Writing by a bank or other person made at the request of a customer that the bank or other person will honor drafts or other demands for payment upon compliance with the conditions specified in the Letter of Credit.") (Exhibit A, p. 16.)

34. Citizens is entitled to coverage under Insuring Agreement E because Citizens made payments on the faith of the USDA Assignment Guarantee Agreement which bears a forgery and because the USDA Assignment Guarantee Agreement was actually physically possessed by Citizens' authorized sub-custodian, U.S. Bank., and Loan Participation Coverage is indicated as included under Insuring Agreement (E) in the Table of Single Loss Limits of Indemnity and Deducible amounts. (Exhibit A, p. 2.)

35. Citizens is entitled to coverage under Insuring Agreement G because the USDA Loan Note and Assignment Guarantee Agreement are instruments pertaining to assignment of mortgages, defective because of the forgery, which Citizens acted on the faith of when it purchased interest in loan pools through Pennant.

## ONEBEACON'S DENIAL

36. Citizens notified Atlantic Specialty and OneBeacon of its claim and provided proof of its loss on November 3, 2014.

37. Defendants denied Citizens' claim on March 24, 2015.

38. Defendant's denial of coverage violates the plain language of the Bond as well as pertinent Wisconsin law, having no reasonable basis.

39. Despite Citizens' request that Defendants reconsider the denial of coverage, the facts of the transaction, and Wisconsin law, the Defendants re-affirmed their denial on June 3, 2015, and in doing so, intentionally disregarded Citizens' rights under the applicable Bond, without any reasonable basis.

-8-
QB\35503683.3
Case 2:15-cv-00782-DEJ   Filed 06/29/15   Page 8 of 12   Document 1

## FIRST CAUSE OF ACTION

### (Declaratory Judgment Regarding Defendants' Duty to Indemnify Citizens)

40. Plaintiff re-alleges and incorporates by reference each of the allegations set forth in paragraphs 1 through 39 above as though fully set forth herein.

41. As set forth above, Defendants have a duty to indemnify Citizens for losses Citizens incurred as a result of the forged documents and its reliance on the forged documents.

42. Citizens has fully complied with all applicable terms and conditions of the Bond, including timely payment of premiums due under the policies. All exclusions in the Bond are inapplicable. Any conditions precedent to recovery have been satisfied, waived, or are otherwise inapplicable.

43. Defendants have refused to indemnify Citizens for its losses.

44. An actual and justiciable controversy exists between Citizens and Defendants as to whether Defendants are required to indemnify Citizens.

## SECOND CAUSE OF ACTION

### (Breach of Contract for Refusal to Indemnify Citizens)

45. Plaintiff re-alleges and incorporates by reference each of the allegations set forth in paragraphs 1 through 44 above as though fully set forth herein.

46. The Bond constitutes a valid and enforceable contract between Citizens and Defendants.

47. Defendants are obligated, pursuant to the terms of the Bond, to indemnify Citizens for the losses Citizens incurred with respect to the Pennant transactions.

48. Defendants have materially breached their contractual obligations to Citizens by failing and refusing to indemnify Citizens for the losses Citizens incurred with respect to the Pennant transactions.

49. As a direct and proximate result of Defendants' material breaches of the Bond, Citizens has been damaged as alleged herein in an amount to be proven at trial which is greater than the jurisdictional minimum of $75,000. In particular, Citizens has been deprived of the benefit of insurance coverage for which Citizens has paid substantial premiums and has incurred in excess of $75,000 of damages as a result of the Pennant transactions and Defendants' bad-faith denial of coverage.

## THIRD CAUSE OF ACTION

### (Bad Faith for Wrongful Refusal to Indemnify Citizens)

50. Plaintiff re-alleges and incorporates by reference each of the allegations set forth in paragraphs 1 through 49 above as though fully set forth herein.

51. There is a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured.

52. Defendants breached their duty of good faith to Citizens by failing to adequately investigate the circumstances of Citizens' loss and by unreasonably denying indemnity to Citizens without reasonable basis and contrary to the applicable bond language.

53. Defendants unreasonably denied coverage under the bond in a knowing manner or based upon reckless disregard or indifference to the facts or proofs submitted by Citizens.

54. As a result of Defendants' bad faith conduct, Citizens has been forced to incur damages including, but not limited to, costs and fees associated with this lawsuit.

-10-

**WHEREFORE**, Citizens prays that the Court enter a judgment as to Defendants as follows:

(a) Declaring that Defendants have a duty to provide coverage to Citizens for its loss pursuant to the terms of the Bond;

(b) Awarding Citizens a money judgment for the amounts it is entitled to recover pursuant to the terms of the Bond;

(c) Awarding Citizens a money judgment for the amounts it is entitled to recover as a result of Defendant's breach of the Bond;

(d) Awarding Citizens a money judgment for the amounts it is entitled to recover as a result of Defendants' bad faith denial of coverage under the Bond;

(e) Awarding Citizens all attorneys' fees and expenses incurred by Citizens in this action as allowed by law;

(f) Awarding Citizens all interest on the above amounts allowed by law, including pre- and post-judgment interest;

(g) Awarding punitive and exemplary damages in an amount to be determined at trial; and

(h) Awarding Citizens such other and further relief as this Court deems necessary, proper, and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial in the above-entitled action on all claims for relief for which Plaintiff is entitled to a trial by jury.

Dated this 29th day of June, 2015.

          Patrick S. Nolan
          State Bar No. 1024491
          Alexandra W. Shortridge
          State Bar No. 1086553

          /s/Alexandra W. Shortridge
          411 East Wisconsin Avenue
          Suite 2350
          Milwaukee, WI 53202-4426
          414.277.5000

          *Attorneys for Plaintiff*
          *Citizens Bank Holding Inc.*